**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JAIME RENE MARTINEZ SILVA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1773-R** |
| | ) | |
| **MARKWAYNE MULLIN, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**ORDER**

Challenging his detention by Immigration and Customs Enforcement, Petitioner, Mr. Jaime Rene Martinez Silva, seeks release from detention by this Court through a writ of habeas corpus under 28 U.S.C. § 2241. [Doc. No. 1]. The Court referred Mr. Silva's petition to United States Magistrate Judge Suzanne Mitchell, who recommended [Doc. No. 18] on October sixth that the Court deny the Petition—in part because Mr. Silva's prolonged-detention claim was premature. But on October twenty-first, the Tenth Circuit decided *Abedi v. Carter*[1] and, following Mr. Silva's objections [Doc. No. 20], the Court Ordered [Doc. No. 21] supplemental briefing to determine whether *Abedi* affected any of Judge Mitchell's conclusions. Having reviewed that briefing, the Court concludes that Mr. Silva's detention is not presumptively reasonable, and that his removal is not reasonably likely to occur.

[1] No. 25-3179, 2026 WL 3149141 (10th Cir. Oct. 21, 2026).

Under 8 U.S.C. § 1231(a)(6), ICE may continue to detain a noncitizen beyond a 90-day period of mandatory detention, but not indefinitely. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Under *Zadvydas*, the Court presumes that detention following the first six months after a final order of removal is reasonable, but permits the "noncitizen [to] rebut this presumption by showing that removal is not reasonably foreseeable and thus continued detention is unreasonable and no longer authorized by statute." *Abedi*, 2026 WL 3149141, at *27 (citation modified). Once the six months are up, "the calculus changes" and "[d]etention after this point is no longer presumed reasonable." *Id.* at *28. Key to this case is when that six-month clock starts ticking.

In *Abedi*, the Tenth Circuit held that the clock starts ticking on the day that an Immigration Judge enters a final order of removal. *Id.* at *26. The issue, therefore, turns on when Mr. Silva's removal order became final. Judge Mitchell concluded that an Immigration Judge ordered Mr. Silva removed from the United States in 2006. Doc. No. 18 at 2. Mr. Silva persisted, however, and reentered the United States at least two more times. Both times, an Immigration Judge reinstated his prior order of removal under 8 U.S.C. § 1231(a)(5), which provides:

> If the Attorney General finds that a[] [noncitizen] has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed.

The statutory text plainly provides that although an Immigration Judge reinstated Mr. Silva's removal order just over four months ago, it was "reinstated from its original date"—20 years ago—so six months have come and gone. *Id.*

Respondents disagree, arguing that notwithstanding the text of § 1231(a)(5), the six-month presumption begins on the date the order is reinstated. Since the six-month presumption begins on "[t]he date the order of removal becomes administratively final," *id.* § 1231(a)(1)(B), and they contend that federal regulations treat reinstatement as a "distinct administrative act," they deserve a fresh six-month presumption, Doc. No. 23 at 3. But the regulation they cite says nothing explicit about determining whether a removal order is final, and even if it did, it couldn't contradict the statute. 8 C.F.R. § 241.8; *see United States v. Ransom*, 642 F.3d 1285, 1292 n.5 (10th Cir. 2011) ("Statutorily authorized, substantive regulations generally do have the force of law unless they are irreconcilable with the clear meaning of a statute."). Besides, the regulation and the statute are consistent: A final order of removal may neither "be reopened [n]or reviewed" in a reinstatement proceeding, meaning that for finality purposes, the Court looks to the order of removal, not the reinstatement proceeding. *Compare* § 1231(a)(5) ("[T]he prior order of removal . . . is not subject to being reopened or reviewed.") *with* § 241.8 ("The [noncitizen] has no right to a hearing before an immigration judge in such circumstances."). So the Court concludes that Respondents aren't entitled to a new, six-month reasonableness presumption.

Respondents' final point is that, five days after *Abedi*, "[T]he Tenth Circuit . . . held that a reinstatement order is distinct from the original order of removal." Doc. No. 23 at 6–7. The case, *Vizguerra-Ramirez v. Blanche*, doesn't further clarify the issue. No. 25-9559, 2026 WL 3203293 (10th Cir. Oct. 26, 2026). In *Vizguerra-Ramirez*, the Tenth Circuit considered whether it had jurisdiction to review a reinstatement order despite statutory text, which provides that the court would have jurisdiction to review only "final order[s] of

removal." 8 U.S.C. § 1252. The Court concluded that its prior precedents, holding that since reinstatement orders are the "functional equivalent" of final orders of removal, in that they necessarily require an IJ to conclude that a noncitizen is removable, they suffice as reviewable orders to establish jurisdiction under § 1252. *Vizguerra-Ramirez* at *4.

Contrary to Respondents' arguments, however, just because *Vizguerra-Ramirez* says that reinstatement orders are the functional equivalent of final orders of removal, it doesn't ineluctably follow that reinstatement orders deserve a fresh six-month presumption. This is especially true where, as in *Vizguerra-Ramirez*, a petitioner's "putative reinstatement order" had nothing to reinstate, since she alleged she was never given a final order of removal in the first place. *Id.* at *3. It thus makes sense for the Tenth Circuit to conclude it has jurisdiction over an order with "the same characteristics" of a removal order. *Id.* at *4. It doesn't make sense, however, to apply that reasoning to this case since the same jurisdictional concerns aren't at play.

In any event, just as the Tenth Circuit's reading is consistent with the statutory text of § 1252, so too is this Court's reading consistent with the text of §1231(a)(5). Since the Tenth Circuit was interpreting § 1252 in *Vizguerra-Ramirez*, its holding doesn't bind the Court's interpretation of § 1231(a)(5) here. *See United States v. Heineman*, 767 F.3d 970, 984 (10th Cir. 2014) (Baldock, J., concurring). As such, this case is helpful to the extent it persuasively justifies Respondents' argument. But it doesn't, because, as Judge Eid noted in her separate opinion, the cases the majority relies on, while binding for § 1252, lack "any additional analysis" beyond "follow[ing] the weight of authority in other circuits" and "[e]ven conceding that reinstatement orders serve the same function as orders of removal,

this does not mean reinstatement orders are themselves orders of removal." *Vizguerra-Ramirez* at *10 n.2 (Eid, J., concurring). Moreover, as the majority noted, it had no power to overrule a prior panel unless an intervening Supreme Court cases clearly abrogated that panel ruling. *Id.* at *4. So despite the debate within the panel in *Vizguerra-Ramirez*, it doesn't bind the Court's interpretation of this statute and isn't persuasive in favor of Respondents.[2]

Once the reasonableness presumption ends, Mr. Silva may secure his release under an order of supervision if he can show that his "removal is no longer reasonably foreseeable." *Zadvydas*, 533 U.S. at 699; 8 U.S.C. § 1231(a)(3). In support, he points to his status as a member of the Class in *Immigr. Ctr. for Women & Child. v. Noem*, 351 F.R.D. 324, 348 (C.D. Cal. 2026) (*ICWC*). And while Magistrate Judges in this district have recommended against providing habeas relief based on membership in this class, none of those R&Rs addressed whether *ICWC* member status rendered a petitioner's removal no longer reasonably likely. *See, e.g.*, *Jangi v. Figueroa*, No. CIV-26-1899-SLP, 2026 WL 3232142, at *1 (W.D. Okla. Oct. 28, 2026), *adopted without objection*, No. CIV-26-1899-SLP, 2026 WL 3368194 (W.D. Okla. Nov. 5, 2026).

[2] The Court is also persuaded neither by Respondents' citations to nonbinding district court cases that preceded *Abedi*, nor by Respondents' reliance on *Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021). In *Johnson*, the Supreme Court noted that the noncitizens' removal orders "ha[d] long been 'administratively final'" since "[e]ach [noncitizen] had the opportunity to seek review in the BIA after the initial removal order was entered, and § 1231(a)(5) explicitly prohibits them from seeking review or relief from the order after it is reinstated following unlawful entry." *Id.* at 535. And in any event, the Court expressly declined to opine on the differing approaches to interpreting § 1252 and § 1231. *Id.* at 535 n.6.

The reason why membership in the *ICWC* class suggests that Mr. Silva's removal is not reasonably likely is that Mr. Silva has what's called a pending VAWA self-petition. If U.S. Citizenship and Immigration Services grants that petition, he could be on the path to securing lawful status. In the meantime, USCIS has confirmed to Mr. Silva that it won't reach a decision until at least January 27, 2027. [Doc. No. 15-1]. For people like Mr. Silva with these self-petitions, ICE previously chose not to prioritize their removal unless there were "exceptional circumstances," which Respondents don't argue there are here. *ICWC* at 353. ICE changed this policy in 2025, but the court in *ICWC* stayed the 2025 changes, reinstating the previous policy of deferring enforcement. *Id.* at 397. Since Mr. Silva is a member of the *ICWC* class, ICE's current policy suggests that his removal is by no means reasonably likely to occur, at least not for several more months at the very earliest, if at all. Since Respondents fail to argue against it, and Mr. Silva's argument is persuasive, the Court agrees with Mr. Silva and finds that his removal is not reasonably likely to occur.[3]

Accordingly, the Court declines to adopt the R&R and ORDERS Respondents to immediately release Mr. Silva under an appropriate order of supervision. Respondents shall certify their compliance with this Order within 5 days.

---

[3] The Court need not resolve, at this time, whether Mr. Silva's membership in the class action in *ICWC* entitles him to deferred removal. Rather, it suffices to say that, as of now, the fact that USCIS has told Mr. Silva that it is unlikely to reach a decision on his pending VAWA self-petition and that ICE's policy of deferring enforcement for those with pending self-petitions means that Mr. Silva is not reasonably likely to be removed and thus is entitled to release under supervision.

IT IS SO ORDERED this 19th day of November 2026.

David L. Russell

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**